UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| ACTIAN CORPORATION,<br>Plaintiff<br><br>v.<br><br>AUTOCLERK, INC., & BEST WESTERN INTERNATIONAL, INC.<br>Defendant. | §<br>§<br>§<br>§<br>§  Case No: 1:25-cv-01291<br>§<br>§<br>§<br>§<br>§ |

## ORIGINAL COMPLAINT

Actian Corporation ("Actian" or "Plaintiff"), by and through its attorneys, files its Original Complaint against AutoClerk, Inc. ("AutoClerk") and Best Western International, Inc. ("Best Western") (collectively "Defendants") and hereby pleads and alleges as follows:

## PARTIES

1. Plaintiff Actian Corporation is a Delaware corporation with its principal place of business at 2600 Great American Way, Suite 401, Santa Clara, CA 95054. Actian also has an office in Austin, Texas, from which Actian has engaged in ongoing interactions with Defendants relating to this dispute.

2. Defendant AutoClerk is a California corporation with its principal place of business at 1981 North Broadway, Suite 430, Walnut Creek CA 94596.

3. Defendant Best Western is an Arizona corporation with its principal place of business at 6201 N. 24th Parkway, Phoenix, AZ 85016.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction because the subject matter of this action arises under the United States Copyright Act of 1976, 17 U.S.C. § 101, *et seq*. ("Copyright Act"). The Court also has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.

5. The Court has personal jurisdiction over Defendants. Defendants have had sufficient minimum contacts within the State of Texas and within the Western District of Texas as a result of the substantial business conducted, substantial sales made, and substantial revenues earned from businesses within the State of Texas and the Western District of Texas, including Best Western branded hotels, independent hotels, other chain hotels, and property management companies. Defendants' purchase of Actian's software occurred in the State of Texas and the Western District of Texas. Defendants' improper use, reproduction, and/or distribution of Actian's software, which constitute infringement of Actian's copyrights, occurred in the State of Texas and the Western District of Texas. Defendants' breaches of contract occurred in the State of Texas and the Western District of Texas. Defendants agreed that the agreements at issue would be governed and interpreted under the laws of Texas. The claims and allegations herein therefore arise out of Defendants' purposeful contacts with Texas.

6. Venue is proper in this District because a substantial part of the events or omissions underlying this action occurred in the Western District of Texas, as outlined above.

## BACKGROUND

**Actian Software**

7. Plaintiff Actian is a computer software company whose primary focus is hybrid data management, integration, and analytics. Actian is renowned for its innovative data management and integration technologies. Actian has an installed base of over 5,000 customers

including large global enterprises, public sector entities, and small to medium enterprises.

8. Actian is the owner of Pervasive PSQL (now known as Actian Zen), a database management system optimized for embedding in applications. PSQL is used in packaged software applications offered by independent software vendors and original equipment manufacturers.

9. Pervasive PSQL v.10 (the "Actian Software") is the software at issue in this dispute and is protected under United States Copyright Registration Number TX0007494543 (the "Actian Copyright"). A copy of the registration certificate is attached as Exhibit A.

**AutoClerk's Use of Actian Software Subject to License Agreements**

10. Defendant AutoClerk is a software company that provides hotel property management solutions (PMS) for Best Western branded hotels, independent hotels, other chain hotels, and property management companies (collectively "PMS Customers"). AutoClerk's PMS application is used by its PMS Customers to, among other things, manage reservations, check-ins/outs, billing, room cleaning, and other front-desk operations. AutoClerk offers PMS Customers subscription-based pricing for its PMS application and bills its customers on a monthly, quarterly, or annual basis. The Actian Software functions as the database for AutoClerk's software and is a crucial component of AutoClerk's PMS application. Upon information and belief, AutoClerk's PMS application cannot operate as intended without the Actian Software.

11. In August 2008, AutoClerk licensed the Actian Software from Pervasive Software, Inc. ("Pervasive"), Actian's predecessor in interest, by purchasing a PSQL v.10 Workgroup-1 User license through Pervasive's eCommerce platform. In 2013, Actian acquired Pervasive, and all rights from Pervasive's previous software sales were transferred to Actian. AutoClerk's license to and use of the Actian Software is governed by specific terms and conditions, including those outlined in the PSQL v.10 Workgroup Edition License Agreement (the "v.10.1 License

Agreement"), as well as the PSQL v.10 Workstation or Workgroup Edition License Agreement, which AutoClerk assented to when it updated the Actian Software (the "v.10.3 License Agreement," and collectively with the v.10.1 License Agreement, the "License Agreements").

12. The License Agreements grant AutoClerk a nonexclusive, non-transferable right to install and use the Actian Software, subject to certain use restrictions. AutoClerk has not complied with the use restrictions.

13. By purchasing the PSQL v10 Workgroup-1 User license, AutoClerk is allowed to have a single user access the database engine, which the user may install on one machine. If AutoClerk wants more than one user to access the database engine on a machine, it must first purchase additional Workgroup licenses, such as a 3-user or 5-user license. AutoClerk cannot reuse or make additional copies of the Actian Software for a different user, give access to a different or additional user, or install the software on a different machine without obtaining additional licenses and paying Actian the corresponding fees. Simply put, AutoClerk could not install the database engine license in one location for use by one user and then install the same license at another location for an additional user.

14. AutoClerk originally used PSQL 10.1 of the Actian Software but later upgraded to PSQL v10.3. When AutoClerk upgraded to PSQL v.10.3, AutoClerk was prompted to read and accept the terms of the v.10.3 License Agreement. If AutoClerk did not wish to agree to the v.10.3 License Agreement, it was instructed not to install, copy, or otherwise use the updated software. By installing, copying, or otherwise using the updated PSQL v.10.3 Actian Software, AutoClerk therefore agreed to be bound by the v.10.3 License Agreement.

15. The License Agreements limit how AutoClerk can use the Actian Software. They specify that AutoClerk may use the Actian Software only for its internal business purposes. The

License Agreements also state that AutoClerk cannot use the Actian Software to host applications for third parties or to provide service bureau, time-sharing, or other computer services to third parties. In other words, AutoClerk cannot allow its PMS application (which requires the Actian Software) to benefit other companies or customers.

16. The v.10.3 License Agreement also prohibits "pooling" or "multiplexing," which refers to attempts to reduce the number of required user licenses by allowing multiple users to access the software through a shared connection or terminal. The License Agreements specify that the number of licenses required is based on the actual number of distinct users who input data into or access the software, regardless of whether they do so directly or indirectly.

17. The License Agreements expressly prohibit AutoClerk from assigning or transferring any rights, obligations, or interests in the Software, in whole or in part, without the prior written consent of Actian. The License Agreements further state that any attempted assignment without Actian's consent is void. They also specify that "a merger or other acquisition by a third party will be treated as an assignment."

**Best Western's Acquisition of AutoClerk**

18. In the fall of 2024, Actian learned that Best Western had acquired AutoClerk. This acquisition violated the License Agreements, which prohibit AutoClerk from assigning or transferring its rights in the Actian Software without Actian's prior written consent, including through a "merger or other acquisition by a third party," which constitutes an assignment under the License Agreements.

19. Actian has since learned that Best Western described the acquisition of AutoClerk as a strategic move to enhance its technological and distribution capabilities and streamline its hotel operations. Upon information and belief, Best Western wanted to create a unified inventory

system by merging its central reservation system (CRS) with AutoClerk's property management system (PMS) to have a single shared database to manage information more smoothly.

20. Best Western claimed the acquisition would allow it to implement technology to better assist Best Western branded hotels by, among other things, providing more effective guests services, simplifying management of hotel rates and reservations, and increasing revenue. For example, Best Western claimed, "the PMS was worth acquiring – it gives us a level of control so we can make sure that we are providing features and functionalities our hotels expect and deserve." Best Western claimed that AutoClerk's customers that were not associated with Best Western would also benefit from the acquisition, and plans existed to provide connectivity solutions and integration capabilities regardless of brand affiliation. Defendants claim the PMS Application can seamlessly integrate with the existing software services used by chain or independent hotel owners.

21. Defendants promote the AutoClerk PMS Application as its official PMS for Best Western branded hotels in North America. According to AutoClerk's website, "Best Western strongly recommends all its properties in North America switch to AutoClerk to ensure seamless integration with the brand's Profit Platform, and to create a more consistent guest experience." While not mandatory for all Best Western Hotels, "all new PMS installations should be AutoClerk," and "existing hotels are required to switch to AutoClerk only if they are changing their PMS."

22. AutoClerk's website states that with the PMS Application its PMS Customers "can connect with or continue using many existing central reservation systems, including SynXis/Sabre, Siteminder, Windsurfer, Travel Trippe, and Sceptre," and "We'll help you connect with commonly used distribution channels like Booking.com and Expedia.com." Defendants therefore are marketing and promoting AutoClerk's PMS as part of a broader connected system that third parties

can use, not limited to internal use. These statements run counter to the explicit terms of the License Agreements, which prohibit using the Actian Software, and by extension, the PMS application in which the Actian Software is integrated, to benefit or provide services to third parties.

**Defendants' Violations of the License Agreements**

23. Despite the assignment being void under the terms of the License Agreements, Actian attempted to work with the Defendants to determine the nature and extent of their use of the Actian Software, so that it could ensure that proper licenses were obtained. In connection therewith, Actian sought to enforce its audit rights under the License Agreements.

24. Actian's audit aimed to review, among other things, how AutoClerk (as acquired by Best Western) purchased the Actian Software, how AutoClerk implemented the Actian Software in its PMS Application, and distributed the Actian Software, including its distribution, use, or support by Best Western. Actian requested a list of properties where the Actian Software had been installed by AutoClerk's PMS Customers, along with details on the licenses, including key numbers and versions of the deployed software.

25. In the fall of 2024, Defendants initially cooperated with Actian's audit. Kevin Velez, the Managing Director for Technology Management at Best Western, and Vojtek "VK" Karpuk, Corporate Counsel and Managing Director, Legal, at Best Western, communicated with Actian. Mr. Karpuk indicated he was communicating on behalf of Best Western International, Inc. and provided information about AutoClerk's use of the Actian Software, including PMS Customers' use of the Actian Software. Defendants identified names and addresses for Best Western branded hotels, other chain hotels, and independent hotels where the Actian Software was used.

26. However, Defendants eventually stopped participating in the audit by failing to provide the requested records and/or by providing incomplete information. Defendants' failure to comply with the audit—which independently violated the License Agreements—has prevented Actian from determining the full extent to which Defendants violated the terms of the License Agreements and Actian's IP rights.

27. Despite Defendants' failure to fully cooperate with the audit, Actian discovered that AutoClerk, and by extension, through its purported acquisition, Best Western, have used and continue to use the Actian Software in violation of the License Agreements by reproducing, distributing, and/or redistributing the Actian Software. For example, AutoClerk reused the PSQL v10 Workgroup-1 User license—whose use was limited to one user on one machine—at least *696* times by installing the license key at different hotels, including at Best Western branded hotels, across the country, including in Texas, and allowing multiple users to access it. AutoClerk did not pay any license fees for this usage. Before the initial audit, Actian could not have discovered and was not aware of this improper use of the Actian Software. Defendants have also otherwise improperly used the Actian Software beyond the rights granted in the License Agreements, which prohibit multiplexing and using the Software to provide computer services to third parties. Defendants pool connections to allow additional users, such as hotels and property managers, to use the Actian Software, thereby violating the multiplexing and other license restrictions. Upon information and belief, Defendants allow and encourage hotels, independent hotels, and property managers to rely on a single license to manage hundreds of properties.

28. Defendants' actions in infringing the Actian Copyright and breaching the License Agreements have been willful. Despite knowing that they are improperly using the Actian Software beyond the rights granted in the License Agreements Defendants have taken no

meaningful action to suspend the ongoing copyright infringement. Defendants' statements and actions encourage and promote the use of the Actian Software in a manner that violates the License Agreements.

29. The extent to which the Defendants have used, reproduced, distributed, and/or redistributed the Actian Software is within their knowledge and control. Defendants have refused to provide Actian with basic information about their use, reproduction, distribution, and redistribution of the Actian Software, which is necessary to determine fees and compliance with the License Agreements, despite their express obligations in the License Agreements to provide such information and despite Actian's repeated requests.

30. Actian diligently attempted to resolve the issue of Defendants' breaches and IP violations, unlicensed uses, reproductions, distributions, and redistributions by discussing proposals with Defendants to resolve the matter amicably. Those discussions failed, necessitating this action.

## COUNT I
## COPYRIGHT INFRINGEMENT

31. Actian restates and incorporates by reference the allegations in the preceding paragraphs.

32. Actian is the owner of a valid copyright registration in the Actian Software. PSQL v.10 is protected under United States Copyright Registration Number TX0007494543. A copy of the registration certificate is attached as Exhibit A

33. Defendants have used, reproduced, distributed, and/or redistributed the Actian Software outside of the scope of the license it was granted and/or without a license to the Actian Software, in violation of Actian's exclusive copyright rights under 17 U.S.C. § 106, which constitutes infringement.

34. Defendants' infringement was and continues to be willful and intentional.

35. As a direct and proximate result of Defendants' wrongful conduct, Actian is entitled to damages in an amount to be proven at trial. Such damages include but are not limited to Actian's actual damages and Defendants' profits attributable to infringement, or in the alternative, statutory damages, including for willful and intentional infringement. Actian is further entitled to attorneys' fees, expert fees, and other costs and expenses as set forth in 17 U.S.C. § 505 and other relevant law.

36. Actian is further entitled to injunctive relief, as well as an order requiring Defendants to return all copies of the Software and related documentation to Actian.

## COUNT II
## CONTRIBUTORY COPYRIGHT INFRINGEMENT

37. Actian restates and incorporates by reference the allegations in the preceding paragraphs.

38. The Copyright Act imposes liability not only on those that directly infringe copyrights, but also on those that induce or contribute to such infringement or are vicariously liable for its occurrence.

39. Best Western is contributorily liable for the direct copyright infringement of AutoClerk. By promoting, marketing, encouraging, and/or otherwise enabling the unauthorized use, sale, and distribution of the PMS Application, Best Western has induced and/or materially contributed to AutoClerk's ongoing acts of infringement of the Actian Copyright.

40. Best Western's contributory infringement was knowing and intentional, including because Actian repeatedly informed Best Western of the infringement during the audit discussions.

41. Best Western's conduct constitutes willful contributory copyright infringement.

42. As a direct and proximate result of Best Western's contributory copyright infringement, Actian is entitled to damages in an amount to be proven at trial. Such damages include but are not limited to Actian's actual damages and Best Western's profits attributable to infringement, or in the alternative, statutory damages, including for willful and intentional infringement. Actian is further entitled to attorneys' fees, expert fees, and other costs and expenses as set forth in 17 U.S.C. § 505 and other relevant law.

43. Actian is further entitled to injunctive relief.

## COUNT III
## BREACH OF CONTRACT

44. Actian restates and incorporates by reference the allegations in the preceding paragraphs.

45. A contract exists between Actian and AutoClerk, and, to the extent the assignment was valid, Actian and Best Western, as embodied in the License Agreements, for use of the Actian Software. Actian has fully performed under the terms of the License Agreements and continues to perform.

46. Defendants materially breached the License Agreements including through the following conduct: (1) using, reproducing, distributing, and/or redistributing the Actian Software beyond the scope of the limited license provided, including without paying required fees to Actian; (2) failing to take steps to prevent the unauthorized reproduction, distribution, redistribution, and/or use of the Actian Software; (3) failing to comply with and appropriately respond to Actian's audit requests related to inspecting Defendants' records to verify compliance with the License Agreements and determine amounts due under the agreements; (4) attempting to assign rights in the Actian Software to Best Western without Actian's prior written consent, violating the License Agreements; (5) attempting to reduce the number of required user licenses by allowing multiple

users to access the software through a shared connection or terminal, violating the License Agreements' prohibitions on multiplexing and pooling; and (6) providing third parties access to and benefits derived from the use of the Actian Software.

47. The foregoing breaches are ongoing.

48. As a direct and proximate cause of Defendants' breaches, Actian suffered and continues to suffer harm and damages, including without limitation, lost licensing revenue and lost fees. For example, Defendants are using, copying, distributing, and/or redistributing the Software without paying Actian license fees mandated by the explicit terms of the License Agreements.

49. Actian is entitled to damages for the breaches, including without limitation, actual and compensatory damages, indirect damages, and consequential damages.

50. In addition to the foregoing damages, under the Agreement, Actian is entitled to the recovery of reasonable attorneys' fees, expert fees, and all other related costs and expenses. Actian is separately entitled to recovery of attorneys' fees and costs under chapter 38 of the Texas Civil Practice & Remedies Code.

51. All conditions precedent to Actian's recovery have been performed or have occurred or have otherwise been waived.

52. Actian is also entitled to specific performance, including in regard to Defendants' audit obligations. Actian is further entitled to injunctive relief, as well as an order requiring Defendants to return all copies of the Software and related documentation to Actian.

## PRAYER FOR RELIEF

Wherefore, in consideration of the foregoing, Plaintiff prays for judgment against Defendants as follows:

1. An order finding that Defendants are liable for breach of contract;

2. An order finding that Defendants are liable for copyright infringement;

3. An order finding that Best Western is liable for contributory copyright infringement;

4. For damages for breach of contract in an amount to be proven at trial, including for actual and compensatory damages, indirect damages, and consequential damages;

5. For actual damages and Defendants' profits for copyright infringement under 17 U.S.C. § 504(b), or alternatively, for statutory damages for copyright infringement under 17 U.S.C. § 504(c), including an award of enhanced damages under 17 U.S.C. § 504(c)(2);

6. For Actian's attorneys' fees, expert fees, and other costs and expenses, as set forth in the Agreement, the copyright statute, 17 U.S.C. § 505, and/or under other relevant law, including applicable state law.

7. For injunctive relief pursuant to 17 U.S.C. § 502 against Defendants and their agents, franchisees, end users, and any other related individuals or entities' continued breaches of the Agreement and/or continued acts of copyright infringement;

8. For an order requiring Defendants and their agents, franchisees, end users, and any other related individuals or entities who may be using Actian's Software in an unauthorized manner to return the Actian Software and all related documentation and cease and desist from all unauthorized use, distribution, or reproduction of the Actian Software;

9. For pre- and post-judgment interest on all damages awarded at the maximum allowable rate; and

10. For all such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury of any issues so triable by right.


Dated: August 12, 2025　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　**REEVES & BRIGHTWELL LLP**

　　　　　　　　　　　　　　　　　　　　*/s/ Luke McHenry*
　　　　　　　　　　　　　　　　　　　　Luke McHenry
　　　　　　　　　　　　　　　　　　　　State Bar No. 24057993
　　　　　　　　　　　　　　　　　　　　3103 Bee Caves Rd, Ste 240
　　　　　　　　　　　　　　　　　　　　Austin, Texas 78746
　　　　　　　　　　　　　　　　　　　　lmchenry@reevesbrightwell.com
　　　　　　　　　　　　　　　　　　　　(512) 334-4500 (Phone)
　　　　　　　　　　　　　　　　　　　　(512) 334-4492 (Fax)

　　　　　　　　　　　　　　　　　　　　**ATTORNEYS FOR PLAINTIFF**
　　　　　　　　　　　　　　　　　　　　**ACTIAN CORPORATION**